<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS CORBISIERO, | : |
| Plaintiff, | : Civil Action No. 09-975 (SRC) |
| v. | : **OPINION & ORDER** |
| LEICA MICROSYSTEMS, INC. and DAVID BEAULIEU, | : |
| Defendants. | : |

**<u>CHESLER, U.S.D.J.</u>**

This matter comes before the Court on two motions for summary judgment, pursuant to FED. R. CIV. P. 56: 1) the motion by Defendants Leica Microsystems, Inc. ("Leica") and David Beaulieu ("Beaulieu") (collectively, "Defendants"); and 2) the motion by Plaintiff Dennis Corbisiero. For the reasons set forth below, Defendants' motion will be denied, and Plaintiff's motion will be granted.

**<u>BACKGROUND</u>**

This case arises out of some employment disputes. The following facts are undisputed. Plaintiff Dennis Corbisiero was first employed by Leica in 1972, and last worked as an Area Sales Director. Leica terminated Plaintiff's employment on December 11, 2008; Plaintiff was approximately 64 years old at that time. During the relevant time period, Defendant David Beaulieu served as Leica's Vice President of the Surgical Division, in which Plaintiff worked.

On March 4, 2009, Plaintiff filed the Complaint in this action, subsequently amended.

The Amended Complaint asserts two claims: 1) employment age discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"); 2) retaliation for protected conduct in violation of the NJLAD. Defendants answered and asserted two counterclaims: 1) conversion; and 2) misappropriation of trade secrets. Plaintiff and Defendants have moved for summary judgment.

## LEGAL STANDARD

**I.     Summary Judgment**

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith

respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II.      Employment Discrimination: Disparate Treatment Claims

All disparate treatment[1] claims for employment discrimination under federal law are analyzed by application of the McDonnell Douglas test:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases. Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual. The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases.

Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (citations omitted). The New Jersey Supreme Court has adopted the McDonnell Douglas test for most employment discrimination claims. Victor v. State, 203 N.J. 383, 408 (2010).

In Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 303 (3d Cir. 2004), the Third Circuit adopted the requirements stated in Swider v. Ha-Lo Indus. for establishing a prima facie case of discriminatory discharge under the NJLAD:

> To make out a prima face case of age discrimination under the LAD, a plaintiff must show: (1) that he is a member of a class protected by the anti-discrimination law; (2) that he was performing his job at a level that met his employer's legitimate expectations; (3) that he was discharged; and (4) that he was replaced by someone sufficiently younger to give rise to an inference of unlawful age discrimination.

Swider v. Ha-Lo Indus., 134 F. Supp. 2d 607, 621 (D.N.J. 2001). In a case like this one, in which Defendants contend that Plaintiff was discharged due to a reduction in force and not

---

[1] A disparate treatment case is one in which the employer treats some people less favorably than others because of their membership in a protected class. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

replaced by another employee, "to establish a prima facie case, [a plaintiff] need only show that he is within the protected class, and was qualified for the job from which he was laid off while other workers not in the protected class were retained." Billet v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir. 1991).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason" for the employer's action. McDonnell Douglas, 411 U.S. 792, 802 (1973). The employer may satisfy the burden by introducing evidence which, taken as true, would allow the factfinder to conclude that there was a nondiscriminatory reason for the unfavorable employment decision. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). The employer need not prove that the tendered reason actually motivated the decision. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). The burden of proving intent remains with the Plaintiff. Id.

If the defendant employer satisfies the burden, then "the plaintiff must 'submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Fakete v. Aetna, 308 F.3d 335, 338 n.3 (3d Cir. 2002). The plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow the factfinder to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

At this stage, the burden has shifted back to the plaintiff, and the plaintiff must show, by a preponderance of the evidence, that the employer's explanation is pretextual. Id. "The test is

whether the plaintiff ultimately persuades the factfinder that the employment decision was caused by bias" and that the real reason for the employer's adverse employment decision is discrimination. Id.

## DISCUSSION

I.   **Defendants' motion for summary judgment**

Defendants move for summary judgment on Plaintiff's claim of age discrimination under the NJLAD. Defendants have chosen not to put the *prima facie* case at issue in this motion, and argue instead only that Plaintiff lacks evidence to establish pretext. (Defs.' Br. 8 n.1.) The summary judgment burden then shifts to Plaintiff to point to the evidence from which a trier of fact could find that Defendants' stated reasons for terminating Plaintiff are pretextual.

To defeat the motion for summary judgment, Plaintiff relies on this principle: "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 765. Plaintiff points to evidence to demonstrate inconsistencies in the employer's proffered reasons such that a reasonable factfinder could find them unworthy of credence.

It is undisputed that budget cuts in Plaintiff's department at Leica caused a reduction in force just prior to his termination. At issue is the reason for choosing Plaintiff for termination, as opposed to another employee. Plaintiff points to the evidence of inconsistencies in Leica's explanation for the termination. Plaintiff first points to the reasons stated by Defendants in their motion papers:

> In selecting which ASD would be discharged pursuant to the RIF, Mr. Beaulieu

> used as criteria the performance of the ASDs on his initiatives, including the more efficient movement of demo equipment, overall management of the IMRs, sales performance against budget and how each ASD interacted with their co-ASDs as well as other Leica employees.

(Defs.' 56.1 Stmt. ¶ 17.)  Plaintiff then points to the December 11, 2008 email Beaulieu sent to Human Resources Manager Art Giecek, which described the meeting on that day with Plaintiff during which Beaulieu informed him of his termination:

> Based on criteria needed to better manage our IMRs and overall business, he has been identified as least qualified to perform functions needed.  When he pressed for details, I mentioned his inability to provide a strategic plan in response to the IMR tool I sent out for all managers.  I also pointed out his inability to move demo equipment as fast as needed to create more evaluation opportunities.

(McKinney Aff. Ex. N.)  While the reasons stated in this email do overlap with the reasons stated in the 56.1 Statement, there are some differences: the 56.1 Statement explanation makes no mention of the strategic plan issue, while the email makes no reference to sales performance.  Plaintiff then points to Beaulieu's deposition testimony, in which Beaulieu played down the importance of performance on sales quotas, and played up the importance of Plaintiff's being "combative," "not being a team player," and "difficult to work with."  (Beaulieu Dep. 209:1-210:13.)

      While the differences between the three explanations might not be big ones, Plaintiff has pointed to enough small inconsistencies, to enough shifting of explanations, to raise a factual question as to whether the inconsistencies in the reasons stated for Plaintiff's termination are sufficient to demonstrate that they are unworthy of credence.  This is especially true when considered in the context of two other factual assertions made by Plaintiff.  First, Plaintiff was "riffed," while a 34-year old employee, previously hired for a newly created position, was

retained. (Pl.'s 56.1 Stmt. ¶ 7.) Second, a younger employee who had been placed on a Work Improvement Plan was retained, whereas Plaintiff, who had never been placed on a Work Improvement Plan, was terminated. (Pl.'s 56.1 Stmt. ¶¶ 10, 47.) A trier of fact, viewing all these factual circumstances together, could reasonably conclude that Leica's explanation is a pretext for age discrimination. Plaintiff has made a sufficient showing to defeat Defendants' motion for summary judgment as to Count I.

As to Count II, the claim for retaliation in violation of the NJLAD, Defendants assert that Plaintiff must prove these elements:

> To establish a prima facie case of discriminatory retaliation, plaintiffs must demonstrate that: (1) they engaged in a protected activity known by the employer; (2) thereafter their employer unlawfully retaliated against them; and (3) their participation in the protected activity caused the retaliation.

Craig v. Suburban Cablevision, 140 N.J. 623, 629-630 (1995). Defendants contend that they are entitled to summary judgment because Plaintiff cannot prove that the employer knew about the protected activity, nor causation. In opposition, Plaintiff points to the November 26, 2009 email sent to Plaintiff by Ohm Savanayana, in which the offer was rescinded:

> I finally had a long discussion with our lawyer. Make the story short, I cannot engage you in a consultant job at the time. Although you are involved in the legal issue with SU NA, at the end of the day, both the Division and SU are under the Leica roof.

(McKinney Aff. Ex. T at 1.) A reasonable finder of fact could easily look at this email and conclude that the lawyer – and thus the employer – knew about the protected activity (the instant suit), and that this caused the lawyer to instruct Savanayana to rescind the offer. This is sufficient to defeat Defendants' motion for summary judgment as to Count II.

Defendants move for summary judgment on Plaintiff's claim for emotional distress

damages, contending that Plaintiff lacks evidence of legally cognizable injury, and that the law requires that such injury be a substantial one. Plaintiff responds persuasively that, in <u>Tarr v. Ciasulli</u>, 181 N.J. 70, 81 (2004), the New Jersey Supreme Court clearly stated that such claims under the NJLAD have no severity requirement, and rejected a heightened standard of proof for such damages. Furthermore, Plaintiff points to his deposition testimony as evidence of emotional injury. (Pl.'s 56.1 Stmt. ¶¶ 138, 139.) This defeats the motion for summary judgment on this point.

Plaintiff has defeated Defendants' motion for summary judgment, which will be denied.

## II. Plaintiff's motion for summary judgment

Plaintiff moves for summary judgment on Defendants' two counterclaims: 1) conversion; and 2) misappropriation of trade secrets. Plaintiff contends that Defendants lack evidence to support their claims, and the summary judgment burden then shifts to Defendants.

Defendants contend that they have evidence to prove the elements of a claim for conversion of a laptop computer. Defendants have an incomplete understanding of the definition of conversion in New Jersey law. It is undisputed that Plaintiff did not return the laptop, which belonged to Leica, until some time after his termination. This is not sufficient, however, to establish conversion. In <u>LaPlace v. Briere</u>, 404 N.J. Super. 585, 596 (N.J. Super. Ct. App. Div. 2009), the Appellate Division incorporated the definition of conversion stated in the Restatement 2d of Torts § 222A (1965). The notes to this Restatement section explain that fundamental to the modern law of conversion is the idea that the convertor's control of the chattel must contain an element of hostility to the rights of the owner:

> The modern law of conversion began with Fouldes v. Willoughby, 8 M. & W.

> 540, 151 Eng. Rep. 1153 (1841), where the court first drew a distinction between a mere trespass interfering with possession of a chattel, and a conversion, which must involve some exercise of the defendant's **hostile** dominion or control over it.

Restatement 2d of Torts § 222A cmt. a (1965) (emphasis added). Thus, the Appellate Division stated:

> the mere use of the property of another without permission of the owner does not necessarily amount to conversion. . . [T]o constitute a conversion of goods, there must be some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel.

LaPlace, 404 N.J. Super. at 595-596.

In the instant case, Defendants have pointed to evidence which could establish that Plaintiff maintained possession of the laptop without permission of Leica, the owner, but have not pointed to evidence from which a reasonable finder of fact could infer either a repudiation of the owner's right, or an act of dominion inconsistent with that right, or destruction of the chattel. Defendants have pointed to no evidence from which a trier of fact could reasonably find the element of dominion hostile to the owner's rights. This constitutes a complete failure of proof of an essential element of the claim of conversion. Defendants have failed to defeat Plaintiff's motion for summary judgment on the conversion counterclaim, which will be granted.

As to the counterclaim for misappropriation of trade secrets, Defendants concede that they have evidence to support some, but not all, of the elements of this claim. Defendants argue that, nevertheless, they are entitled to judgment as a matter of law because Plaintiff's spoliation of evidence entitles them to an adverse inference regarding the remaining elements.

Defendants have not persuaded this Court that any adverse inferences are warranted. In short, all Defendants have to point to here is that Plaintiff sent emails containing confidential

client and product information to his own personal email account, and the record of sent emails from that account was deleted by the email server (not by Plaintiff).  This does not, by any stretch of the imagination, come close enough to a claim for misappropriation of trade secrets, with adverse inferences for spoliation of evidence, to warrant any further consideration.  Defendants have failed to defeat Plaintiff's motion for summary judgment on the misappropriation of trade secrets counterclaim, which will be granted.

For these reasons,

**IT IS** on this 1st day of September, 2011

**ORDERED** that Defendants' motion for summary judgment (Docket Entry No. 96) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for summary judgment (Docket Entry No. 95) is **GRANTED**, and Judgment is hereby entered in Plaintiff's favor on the first and second counterclaims.

    s/ Stanley R. Chesler
    STANLEY R. CHESLER, U.S.D.J.